HARWAY IMPROVEMENT COMPANY, Appellant, v. HUGH R. PARTRIDGE, Defendant, Impleaded with the CITY OF NEW YORK, Respondent.

Second Department, May 26, 1927.

Taxation — motion in partition action to restrain city of New York from collecting taxes — judgment in partition action determined that plaintiff and individual defendant owned uplands — squatters had erected buildings on uplands under permits from city which were issued both before and after judgment — city increased assessment on basis of value of said buildings — plaintiff cannot have relief on motion in partition action made under Civil Practice Act, § 878, subd. 1 — remedy is by certiorari — assessment not illegal and can be attacked only on ground of overvaluation.

In this partition action, it was determined that the plaintiff and the individual defendant were the owners of upland which was claimed by the defendant city of New York. Prior to the entry of judgment and thereafter, the city of New York granted permits to individuals to erect buildings upon the land. Subsequent to the judgment the city of New York increased the assessment against the plaintiff on the basis of the value of the buildings which the plaintiff has sought to have removed. The plaintiff made a motion under subdivision 1 of section 878 of the Civil Practice Act to restrain the collection of the taxes on the theory that the city is rendering the judgment ineffective. A motion for an injunction in the partition action is not the proper remedy. Plaintiff's remedy is by certiorari to review the assessment on the theory that there has been an overvaluation. The assessment is not illegal but may be too high.

APPEAL by the plaintiff, Harway Improvement Company, from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Kings on the 18th day of June, 1926, denying the plaintiff's motion for an injunction restraining the city of New York from collecting or attempting to collect taxes for the years 1922, 1923, 1924 and 1925, levied against plaintiff's land embraced in the complaint, and that said taxes be declared null and void and of no legal effect.

*James J. Dunn*, for the appellant.

*William H. King* [*George P. Nicholson, Corporation Counsel*, and *Isaac Phillips* with him on the brief], for the respondent.

HAGARTY, J. This action, begun in 1916 for the partition of real property, resulted in the entry of a judgment on the 9th day of December, 1920, decreeing that plaintiff and the defendant Partridge were the owners of the upland described in the complaint. (Mod. and affd., 203 App. Div. 174; affd., 236 N. Y. 563.) The order from which this appeal is taken denies a motion made under the provisions of subdivision 1 of section 878 of the Civil

Practice Act, which provides that " Where it appears that the defendant, during the pendency of the action, is doing or procuring or suffering to be done, or threatens, or is about to do, or to procure or suffer to be done, an act in violation of the plaintiff's rights respecting the subject of the action and tending to render the judgment ineffectual, an injunction order may be granted to restrain him therefrom."

In the action the defendant City of New York claimed title to the upland described in the complaint and, for several years prior to the entry of judgment, and afterwards, issued permits for the erection of more than 400 bungalows upon the upland. The bungalows were occupied by many persons, all of whom the plaintiff claims — and its claim is justified by the judgment — were intruders upon the land, without the consent of the owners. On the 24th day of May, 1921, the defendant City of New York was enjoined from the issuance of further permits.

After the entry of judgment, plaintiff made continued but ineffectual efforts to remove the intruders and to demolish the bungalows. It was opposed and prevented from so doing by those to whom the defendant City of New York had issued permits. During all of this time, the squatters refused to pay plaintiff rent for the occupation of the land.

The plaintiff claims that the effect of the actions of the defendant City of New York after the entry of judgment, was to nullify the judgment and, in fact, to secure and continue the possession of the land for the squatters, to the loss and injury of plaintiff, who was thereby unable to secure the benefits of the judgment.

Prior to the entry of judgment, the land was assessed and taxed by the city against the plaintiff. There was, however, no separate or increased assessment or valuation levied or assessed on account of the bungalows erected upon the property. After the entry of the judgment, the assessed valuation of the land was increased by adding thereto a sum representing the value of the bungalows for the years 1922, 1923, 1924 and 1925. The additional tax, resulting from the assessed valuations of the bungalows for these years, amounted to the sum of $18,656.65.

By moving in the action, the plaintiff sought a modification of the judgment which would be, in effect, an adjudication by the court of the validity of the taxes affecting the upland which were imposed after the entry of the judgment. This, I think, it cannot do. In the recent case of *Herpe* v. *Herpe* (225 N. Y. 323, 327) it was held that the only errors which the trial court can correct by amendment of the decision are " Clerical errors or a mistake in the entry of the judgment or the omission of a right or relief

to which a party is entitled as a matter of course." But the right to further relief does not involve new issues not embraced within the original action. (*Parker* v. *Linden,* 59 Hun, 359.) Whether the judgment be considered interlocutory or final, I do not see how it can affect the taxes which were subsequently imposed upon the property adjudicated to belong to the plaintiff. The judgment expressly provides that the taxes and assessments imposed upon the property were valid liens against it. The plaintiff does not contend that the land should not be taxed. Section 3 of the Tax Law provides: " All real property within this State ＊ ＊ ＊ is taxable unless exempt from taxation by law."

Taxes and assessments for local improvements are *in rem* against the real estate, there being no personal liability therefor, and the city can look for payment only to the land which is assessed. So it would seem that the fact that the title to this property was in dispute afforded no reason for suspending the power of taxation until the dispute had terminated. And conceding to plaintiff its strongest position, that is, that the addition of the value of the bungalows to the assessed valuation of the land was in violation of plaintiff's rights, I think it has mistaken its remedy and cannot prevail upon its present theory. While it seems unfair to tax an owner for improvements placed upon his property contrary to his wishes, in violation of his rights and under a claim of ownership, nevertheless, if we assume that the structures erected were personal property, as claimed by the plaintiff, and the valuation thereof was included in the assessment, such assessment would not be illegal, but at most erroneous in amount for overvaluation, there being jurisdiction to assess the property. In *People ex rel. Soeurbee, Inc.,* v. *Purdy* (179 App. Div. 748; affd., 222 N. Y. 657) the distinction was clearly shown between an illegal assessment and one erroneous for overvaluation, wherein the claim of illegality was based upon the inclusion in the assessment of valuation for a building which was not taxable, the court saying (p. 750): " That the tax commissioners had jurisdiction to assess the real estate in question cannot be doubted. Hence it cannot be said to be ' illegal.' At the most the assessment was erroneous because in assessing the value of the real estate the tax commissioners included an element of value which should have been excluded, to wit, the unfinished building. (Greater New York Charter, § 889a, added thereto by Laws of 1913, chap. 324.) This was error, not illegality, in the sense in which the word ' illegal ' is used in the Tax Law."

The only way, therefore, to question the assessment or to obtain relief under the facts here disclosed is by certiorari proceedings, and not by collateral attack such as the plaintiff attempts. The

law seems to be settled that no collateral attack can be made, even though it be assumed that the assessments were erroneous and excessive. In *U. S. Trust Co.* v. *Mayor, etc., of New York* (144 N. Y. 488) the headnote reads: " Where taxing officers, in the exercise of an actual jurisdiction over person and subject-matter, commit an error, their action is not void and their assessment may not be attacked collaterally." And the court said (pp. 492, 493): " They were acting judicially in assessing the plaintiff and their action had all the force and effect of a judgment; which, while open to review by some direct proceeding prescribed by the law, is secure against collateral attack. In *Swift* v. *City of Poughkeepsie* (37 N. Y. 511) it was held that the act of assessment was a judicial act by officers having jurisdiction and could not be questioned by a collateral action. * * * It is necessary for the protection of the taxing officers that an attack upon their action should be limited to that which is direct and in the nature of an appeal from it, where that action has been with jurisdiction; and the irresistible inference seems to be that when the Legislature has created a system of procedure for the review and correction of assessments, * * * it was intended to be an exclusive one." (See, also, *City of New York* v. *Vanderveer,* 91 App. Div. 303; *Mutual Life Ins. Co.* v. *Mayor, etc., of New York,* 144 N. Y. 494.)

The appellant contends that the city assessors reached the limit of their jurisdiction when they fixed the assessable value of the land. It is then claimed that they acted illegally when they attempted to add to such assessable value of the land their valuation of the bungalows. It is claimed that the assessments upon the bungalows were a nullity from the beginning, and that there was never any legal tax fixed or entered upon the value of the land, since the bungalows were not fixtures upon plaintiff's land. It argues that, " Whether a fixture becomes a part of the realty or remains a chattel depends upon the ' reasonable intention ' of the parties. ' This intention is to be inferred from the nature, intended use and mode of the annexation of the fixture; the situation of the annexor and his relation to the fee and the policy of the law.' Washburn Real Prop., Vol. 1, 6th Ed., p. 4." I think it is quite right in the argument quoted; but then it contends that " Where buildings are erected or moved upon land by one who knows that the lands are to be taken for street opening purposes, they are held to be chattels and not part of the realty." In support of this contention *Matter of City of New York (Briggs Ave.)* (196 N. Y. 255), *Matter of City of New York (Hawkstone St.)* (137 App. Div. 630; affd., 199 N. Y. 567), and *Matter of City of New York (Parkway, etc.)* (150 App. Div. 482) are cited. All of these cases, however,

involve street opening proceedings, and the holdings were that the buildings did not add to the value of the land. For that reason they were treated as chattels and not a part of the real property.

Appellant cites many cases in support of its argument that the taxes upon the plaintiff's land are invalid because they included an illegal tax and assessment upon the bungalows. In *Poth* v. *Mayor, etc.* (151 N. Y. 16) the action was brought to recover the amount of an alleged illegal assessment imposed upon plaintiff's property and paid to defendant to prevent its sale. *People* v. *Hagadorn* (104 N. Y. 516) was an action brought to recover the value of certain lumber manufactured from logs cut by defendant from lands to which plaintiff claimed title. So I might analyze all of the cases cited under this point, but I do not think they are helpful to plaintiff, since it has mistaken its remedy.

Appellant further contends that it is immaterial that plaintiff made no application to the board of taxes for a correction of the taxes. It claims that the remedy sought is the proper one because the remedy of certiorari is not exclusive where the assessors have no jurisdiction to assess with lands the value of buildings thereon not owned by the landowner. In support of this, *Matter of Donner-Hanna Coke Corporation* (212 App. Div. 338) is cited. That case is interesting. The appellant there sought relief because assessed for property it did not own. The case, however, is not authority here because it involved an application for a peremptory order of mandamus directing the assessors to apportion the property assessable to the petitioner so that the lands owned by it be divided from the property owned by the United States, and be separately assessed, pursuant to the provisions of section 118 of the Charter of the City of Buffalo (Laws of 1914, chap. 217), which provides that, "The assessor shall have the power, at any time prior to the sale of lands for the nonpayment of taxes and assessments, to rectify any error committed in the making up of the annual assessment-rolls * * * in the following cases only: 1. When the error is entirely clerical. * * * 4. When the property that has been assessed is by law exempt from assessment or taxation."

My conclusion is that the assessments, made subsequent to the judgment in this action, resulting in an increase of plaintiff's taxes for the years 1922–1925, cannot be attacked by motion in this action.

The order should be affirmed, with ten dollars costs and disbursements.

KELLY, P. J., MANNING, YOUNG and KAPPER, JJ., concur.

Order denying plaintiff's motion for permanent injunction affirmed, with ten dollars costs and disbursements.